FILED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2013 SEP 27 P 2: 11

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

**RITA M. WYATT,**

**and**

**SHERLENE DENISE DANIELS**
f/k/a Sherlene D. Jones, on behalf of themselves and
all others similarly situated,

        **Plaintiffs,**

v.

**EARLY WARNING SERVICES, LLC,**
a/k/a Early Warning Systems, LLC,

**and**

**SUNTRUST BANK**

**and**

**BANK OF AMERICA, NATIONAL ASSOCIATION**

        **Defendants.**

Civil Action No: 3:13CV662

## CLASS COMPLAINT

COME NOW the Plaintiffs, Rita M. Wyatt and Sherlene Denise Daniels, on behalf of

themselves and all others similarly situated, and for their Complaint, they state as follows

### INTRODUCTION

1.      Rita M. Wyatt (hereinafter "Wyatt") and Sherlene Denise Daniels (hereinafter

"Daniels") bring this class action against Defendant to obtain relief for themselves and the class

they propose to represent for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*

2.     Early Warning Services, LLC (hereinafter "EWS") operates as a consumer reporting agency that compiles and maintains files on current and former employees of financial institutions – Banks mostly – regarding whether or not such employee was fired for a loss caused by that employee's "fraud." It then furnishes this information to various financial institution customers who access the EWS reports to determine whether or not to hire a prospective employee.

3.     Plaintiffs each allege an individual claim under 15 U.S.C. § 1681e(b), which required that EWS use "reasonable procedures to assure maximum possible accuracy" in the publication of their consumer reports. Plaintiffs had each received a tentative job offer conditioned upon their employment background check. The background checks that Defendant then sold to the employers were inaccurate. Neither Plaintiff was involved in anyway with "fraud" or other misconduct in any way related to fraud. As a result of the consumer reports, each Plaintiff did not then get the job they were seeking or then holding. Plaintiffs also prosecute class claims against EWS based upon its systemic failure to disclose the full content of its files to consumer class members and its unlawful insistence that consumers assert their accuracy disputes using only a specific written form imposed by EWS.

4.     Plaintiffs allege class claims against SunTrust Bank (hereinafter "SunTrust") and Bank of America, National Association ("Bank of America") based upon the failure by employers SunTrust and Bank of America to provide the pre- adverse action disclosures required by the FCRA.

2

## JURISDICTION AND VENUE

5.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly do business in the district and division. SunTrust is based here. Further, EWS is owned in part by Richmond based banks and the third party witnesses most relevant to the Plaintiff's claims reside in this District and Division. The events as to Wyatt occurred in Richmond. The events regarding Daniels occurred in this District. EWS has represented in out-of-state litigation that as a LLC, it is a resident of the state of Virginia, where one of its members – Capital One – is located.

6.     Plaintiffs reside in Richmond and Portsmouth, Virginia respectively and maintain all of the documents relevant to this dispute at their respective homes in Virginia.

## PARTIES

7.     Wyatt is a "consumer" as that term is defined in the FCRA.

8.     Daniels is a "consumer" as that term is defined in the FCRA.

9.     Defendant EWS is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

10.     Bank of America and SunTrust Bank are "users" of consumer reports governed by the FCRA.

## FACTUAL ALLEGATIONS

## FACTS REGARDING EWS

11.     EWS is a consumer reporting agency governed by the FCRA owned by many of

3

the national banks, including Bank of America.

     12.    EWS sells consumer reports to its member financial institutions that are almost

entirely pitched and focused as "Fraud" prevention products.

     13.    For example, the EWS website self-describes the Defendant and its services:

> Early Warning is known throughout the financial services industry as a leader in
> **fraud prevention and risk management**. We provide our customers with fraud
> and risk management tools through collaboration and sharing of information
> within the industry.

> Early Warning is a limited liability company owned by <u>Bank of America</u>, <u>BB&T</u>,
> <u>Capital One</u>, <u>JPMorgan Chase</u> and <u>Wells Fargo</u>. Those **financial institutions** - as
> well as hundreds of others across the country - **exchange information and
> knowledge to obtain a single view of fraud activity** across the enterprise and
> manage fraud on a cross-institution basis.

> Early Warning facilitates this secure exchange between these organizations and
> offers solutions **for responding quickly to evolving fraud challenges.**

<u>http://www.earlywarning.com/about2.html</u> last visited September 11, 2013.

     14.    Within the same website, EWS solicits the resale of its products to other reporting

agencies as "Channel Partners." The EWS products are described:

> By participating in the Early Warning® Channel Program, you are aligning your
> organization and brand with one of the most trusted and established names in
> **fraud prevention.**
> [...]
> Your customers will have access to the same **fraud prevention tools** and risk
> management solutions that the nation's top banks deploy.

<u>http://www.earlywarning.com/channel_marketing.html</u> last visited September 11, 2013.

     15.    EWS even so describes its reports and services as "fraud" focused on its

"Consumer Information" page to which it directs consumers seeking to dispute EWS

inaccuracies. Defendant states therein:

> Early Warning has been providing **fraud prevention services** to organizations for
> nearly 20 years and is a trusted **resource for strategic fraud management**.

http://www.earlywarning.com/consumer-information.html last visited September 11, 2013.

16. And on every webpage, the EWS Footer declares:

Early Warning offers a broad range of fraud prevention and risk management services to help fight fraud in the financial system. Through industry-wide collaboration Early Warning helps **address such issues as deposit fraud, payment fraud and identity fraud**.

http://www.earlywarningsystems.com last visited September 11, 2013.

17. EWS also **titles its employment report product as its "Internal Fraud Prevention service"** that " helps **identify job applicants and employees who were released by another financial services organization because they knowingly caused or attempted to cause financial loss.** New applicant screening through this service assists organizations in their **fight against insider fraud.**" http://www.earlywarning.com/internal_screening.html last visited September 11, 2013.

## FACTS AS TO WYATT

18. On or about June 11, 2011, Rita Wyatt, through third-party staffing company Aerotek, began working at SunTrust in its mortgage loss mitigation department.

19. On or about September 27, 2011, Ms. Wyatt's supervisor at SunTrust emailed her a link to a job application section of the SunTrust website and asked her to apply for a position working for SunTrust as an employee, as opposed to as a temporary employee.

20. Ms. Wyatt completed the online application process that day.

21. On or about Wednesday September 28, 2011 Ms. Wyatt reported for work and was handed a letter from SunTrust offering her the position of mortgage loss mitigation specialist II, at a starting salary of $39,500.00 and a start date of October 11, 2011.

22.     On that same day Ms. Wyatt signed and dated the letter accepting the offer.

23.     On September 29, 2011, unbeknownst to Wyatt, SunTrust then requested for an employment purpose and received from EWS Wyatt's consumer report.

24.     On or about Thursday September 29, 2011, SunTrust informed Ms. Wyatt that it could not employ her after all because of something negative in her report. She was not provided any other details or explanation of the report or its contents, and of course was not shown the EWS report.

25.     On October 3, 2011, Ms. Wyatt received a letter dated September 30, 2011 notifying her that EWS had provided a consumer report to SunTrust that "may adversely affect your employment status."

26.     SunTrust included a document that it claimed to be Wyatt's consumer report. That document included one item supposedly contributed by Bank of America, labeled as "Incident Information" and stating verbatim:

| | | |
|---|---|---|
| Contribution Reference: | BAC223231673 | Date of Incident: 4/11/2005 |
| Contribution Date: | 6/4/2007 | Documentation Status: ORL |
| Loss Amount: | 1735.95 | |
| Contribution Record Type: | Unfavorable Employment Record | |
| Dispute Date: | | |
| Dispute: | N/A | |

27.     In the context of how EWS reports are self-described and marketed, any user or reader of this report could and likely would believe that this "Incident" involved fraudulent and intentional misconduct.

28.     In fact, when Wyatt received this barebones report, she initially had no idea that it pertained to a former incident in which she was terminated by Bank of America as a teller. In

that incident, there was no loss of money and no accusation of fraud or intentional misconduct. Instead, Wyatt at first believed the EWS event had to do with two or three bank overdrafts she had incurred years earlier (each had also been fully paid).

29.     Wyatt then disputed her consumer report with EWS and requested a copy of her entire file from EWS.

30.     When Wyatt tried to make her dispute and request a reinvestigation by telephoning EWS, she was then told that she would have to send her dispute in writing on EWS' specific form and as well provide Defendant extraneous information not required by 15 U.S.C. § 1681i(a), before EWS would commence its investigation.

31.     Wyatt also again asked EWS for a full copy of her file.

32.     EWS form also stated incorrectly that the FCRA would provide a copy of Wyatt's consumer file upon proper identification.

33.     In response to Wyatt's request for a copy of her file, Defendant did not respond or provide any documents.

34.     EWS did not conduct any independent or reasonable reinvestigation of Wyatt's dispute.

## FACTS AS TO DANIELS

35.     In June 2011, Daniels was placed by a temporary agency, Randstad, for employment at Bank of America in Virginia.

36.     In December 2011, Daniels received an e-mail from the Bank of America Human Resources Office related to her employment asking her to provide information including her

name, date of birth, previous names, previous employment, social security number and criminal background. The e-mail had Early Warnings' name listed at the bottom.

37.     Daniels submitted the information by filing the form out on-line and she was required to place her initials at the bottom.

38.     Unbeknownst then to Daniels, Bank of America purchased a consumer report regarding Daniels from EWS, and on information and belief, from other consumer reporting agencies for an employment purpose.

39.     On January 26, 2011, Daniels was asked by her supervisor to come into the conference room where the unit manager was waiting. She was told that Bank of America had requested and used a background check and that she had to leave her job immediately. Daniels asked why and was told that it may be criminal and then she was told by that employee that he did not know. She was given a box and Bank of America security watched her pack up before escorting her out.

40.     After being fired with no written and almost no verbal explanation, Daniels made numerous attempts to discover the basis for her termination. She contacted the temporary agency without success. Daniels then called Human Resources at Bank of America and was told it does not tell anyone why they have been fired.

41.     Finally, Daniels contacted the person who had taken her fingerprints and was told that Bank of America uses EWS for its background checks.

42.     Daniels then contacted EWS to and did request a copy of her entire file. She was required to fill out a detailed identification form.

43.     Early Warning sent Daniels a one page Consumer Report that listed a **BB&T** debt. Daniels then worked to resolve the BB&T issue by paying it even though she believes it

had already been paid.

44.    After Daniels then disputed this BB & T incident to EWS as inaccurate, EWS sent her a letter dated 2/16/12 acknowledging that its reinvestigation determined that the BB & T record was inaccurate and was then to be deleted.

45.    Daniels sent Bank of America the paperwork establishing her innocence and trying to get her job back, but she was not rehired.

46.    Defendant failed, however, to provide Plaintiff with a copy of her entire consumer file. There was substantial and additional information maintained by EWS that it never produces to consumers requesting their file.

47.    The EWS report was materially inaccurate and incomplete and was created by EWS with limited substantive information from its subscribing furnishers. It had no independent basis to report the inaccurate BB & T incident. Further, notwithstanding a small-print disclaimer that the reported BB & T incident may not have been for intentional fraud, the mere inclusion of a person within a EWS report suggests rather than that consumer has been accused of dishonesty an substantial misconduct.

## WILLFULNESS ALLEGATIONS

48.    Defendants knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

49.    Defendants obtained or had available substantial written materials that apprised them each of their respective duties under the FCRA.

50.     Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Wyatt, Daniels and other members of the Classes of their rights under the FCRA.

51.     Defendants' conduct as alleged herein was consistent with their respective established and systematically executed procedures and policies for compliance with the FCRA.

## ALLEGATIONS COMMON TO EACH CLASS CLAIM

52.     **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.  The names and addresses of members of the Class are identifiable through documents maintained by Defendants and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

53.     **Predominance.** FED. R. CIV. P. 23(a)(2).  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.  They include, without limitation: whether EWS indeed provides consumers with all of the information it possesses about them when they request their EWS file; whether EWS's inclusion of non-fraud/dishonesty incidents in its reports is maximally accurate and complete; whether Defendants systemically fail to provide a full copy of the applicant's consumer report(s) before taking any adverse employment action; whether each of these violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

54. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of Defendants were uniform and systemic. The reports obtained and used regarding Plaintiffs and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

55. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

56. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by EWS' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendants has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an EWS report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court

system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

57.      **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class Members. FED. R. CIV. P. 23(b)(2).

## CLAIMS FOR RELIEF

### Count I – Violation of 15 U.S.C. § 1681g(a) – The "1681g" Class vs. EWS

58.      Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

59.      Plaintiffs bring this action on behalf of the following Class, of which they are members:

> All persons residing in the United State of America and its Territories (a) who requested their consumer file from EWS, (b) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, and (c) about whom at that time this file contained at least one "Incident".

60.      The FCRA obligates CRAs like EWS to furnish to a requesting consumer "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a).

61.      In addition to the employment-related information that EWS provides third parties (like SunTrust in the case of Plaintiff Wyatt and Bank of America in the case of Plaintiff Daniels), EWS collects and maintains a trove of additional information regarding consumers such as income, financial data, buying activity, purchase histories, home purchases, births,

marriages, divorces, and other demographic data, to name a few examples. It also contains greater detail or documentary information regarding each "Incident" it will thereafter report, including the actual documentation provided to EWS by its furnisher-subscribers.

62.     EWS willfully violated the FCRA, 15 U.S.C. § 1681g(a) as to each Plaintiff and each member of the class.

63.     Plaintiffs seek statutory damages, punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, for themselves and each member of the class pursuant to 15 U.S.C. §§ 1681n.

### Count II – Violation of 15 U.S.C. § 1681b(b)(3) – The "1681b" Class vs. SunTrust

64.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

65.     Plaintiffs bring this action on behalf of the following SunTrust Class, of which Wyatt is a member:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a consumer report which was used by SunTrust or its agent to make an employment decision regarding such person during the FCRA statute of limitations period, 15 U.S.C. § 1681p, (b.) for whom that decision was either a termination or rejection of the employment and (c.) who were not provided a copy of that consumer report and/or the mandatory disclosures required in 15 U.S.C. §1681b(b) at least five business days before that employment decision.

66.     The FCRA requires that any person "using a consumer report for employment purposes" who intends to take "an adverse action based in whole or in part on the report" must provide the consumer with a copy of the report on which the decision is based and a written description of the consumer's rights under the FCRA "*before* taking such adverse action." 15 U.S.C. § 1681b(b)(3).

67.     When taking such adverse actions against its employees or applicants, however, SunTrust fails to first provide the consumers with the reports on which the decision is based or a summary of the consumer's FCRA rights.

68.     Instead, SunTrust belatedly sends consumers an adverse action notice, ostensibly to meet the requirement that it provide consumers with notice before taking the adverse action. In truth, at the time it sends the notice to the consumer, SunTrust has already decided that the consumer will not be hired or will be fired. The sending of the notice is nothing but an ineffective attempt to technically comply with the FCRA's notice requirements.

69.     SunTrust willfully violated the FCRA, 15 U.S.C. § 1681b(b)(3) as to Wyatt and each member of the SunTrust class.

70.     Plaintiffs seek statutory damages, punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, for themselves and each member of the class pursuant to 15 U.S.C. §§ 1681n.

**Count III – Violation of 15 U.S.C. § 1681b(b)(3) – The "1681b" Class vs. Bank of America**

71.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

73.     Plaintiffs bring this action on behalf of the following Bank of America Class, of which Daniels is a member:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a consumer report which was used by SunTrust or its agent to make an employment decision regarding such person during the FCRA statute of limitations period, 15 U.S.C. § 1681p, (b.) for whom that decision was either a rejection or termination of employment and (c.) who were not provided a copy of that consumer report and/or the mandatory disclosures required in 15 U.S.C. §1681b(b) at least five business days before that employment decision.

14

74.    When taking adverse actions against its employees or applicants, Bank of America fails to first provide the consumer with the report(s) on which the decision is based or a summary of the applicant's FCRA rights.

75.    Instead, Bank of America belatedly sends consumers an adverse action notice, ostensibly to meet the requirement that it provide consumers with notice before taking the adverse action. In truth, at the time it sends the notice to the consumer, Bank of America has already decided that the consumer will not be hired or will be fired. The sending of the notice is nothing but an ineffective attempt to technically comply with the FCRA's notice requirements.

76.    Bank of America willfully violated the FCRA, 15 U.S.C. § 1681b(b)(3) as to Daniels and each member of the Bank of America class.

77.    Plaintiffs seek statutory damages, punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, for themselves and each member of the class pursuant to 15 U.S.C. §§ 1681n.

**Count IV – Violation of 15 U.S.C. § 1681i – The "Reinvestigation" Class**

78.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

79.    Plaintiffs bring this action on behalf of themselves and all other similarly situated following Class, of which they are members:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who, within two years before the filing of this Complaint and continuing through the conclusion of this action, disputed by telephone with EWS items contained in their EWS-generated consumer reports, but for whom EWS did not then commence a reinvestigation.

80. The FCRA mandates that CRAs conduct a free, reasonable reinvestigation to determine the accuracy of information that a consumer disputes as incomplete or inaccurate. 15 U.S.C. § 1681i(a)(1)(A). The CRA may not impose any additional obstacles not provided in the FCRA. *Id.*

81. Plaintiffs disputed the accuracy of information contained in their EWS reports, and EWS failed each time to commence the reinvestigation until and unless the consumer first made that dispute in writing and using its own form.

82. EWS willfully violated the FCRA, 15 U.S.C. § 1681i(a) as to each Plaintiff and each member of the EWS class.

83. Plaintiffs seek statutory damages, punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, for themselves and each member of the class pursuant to 15 U.S.C. §§ 1681n.

### Count V – Violations of 15 U.S.C. § 1681e(b) – Individual Claims vs. EWS

84. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

85. Each named Plaintiff's EWS report contained inaccurate information, and that inaccurate information contributed to the Plaintiffs' employers or potential employers taking adverse actions against them. Further, the reports were grossly incomplete and lacked any detail or contextual explanation for the reported "Incidents."

86. EWS violated 15 U.S.C.§ 1681e(b) as to Wyatt and Daniels by its failure to follow and use reasonable procedures to ensure that their consumer reports were maximally accurate.

87.     As a result of this conduct by the EWS, the Plaintiffs suffered actual damages, including without limitation, by example only, and as described herein on their behalf by counsel: loss of employment, loss of income and equity, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

88.     EWS willfully and negligently violated the FCRA, 15 U.S.C. § 1681e(b) as to each Plaintiff.

89.     Plaintiffs seek statutory damages, punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, for themselves pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs respectfully pray for relief against EWS as follows:

a.      An order certifying the proposed Classes set forth above under Federal Rule of Civil Procedure 23, and appointing Plaintiffs and the undersigned Counsel of Record to represent those Classes;

b.      The creation of a common fund available to provide notice and remedy;

c.      Statutory and punitive damages for themselves and the Classes;

d.      Injunctive relief;

e       A classwide liability determination for themselves and each;

f.      Actual damages for themselves, individually, under Claim V;

g.      Attorneys' fees, expenses, and costs;

g.      Pre-judgment and post-judgment interest as provided by law; and

h.      All other relief the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted,

**RITA M. WYATT AND SHERLENE DENISE DANIELS**,
**f/k/a Sherlene D. Jones, on behalf of themselves and**
**all others similarly situated,**

BY _____
   Leonard A. Bennett, VSB #37523
   Susan M. Rotkis, VSB#40693
   Consumer Litigation Associates, P.C.
   763 J. Clyde Morris Boulevard, Suite 1-A
   Newport News, VA 23601
   Phone: (757) 930-3660
   Fax: (757) 930-3662
   Email: lenbennett@clalegal.com

   Christopher Colt North
   VSB#16955
   The Consumer & Employee Rights Law Firm, P.C.
   751-A Thimble Shoals Boulevard
   Newport News, VA 23606
   Phone: (757) 873-1010
   Fax: (757) 873-8375
   Email: cnorthlaw@aol.com

   Cindra M. Dowd
   Richard J. Serpe, P.C.
   580 East Main Street, Suite 310
   Norfolk, Virginia 23510
   Phone: (757) 233-0009
   Fax: (757) 233-0455
   Email: cdowd@serpefirm.com